This is Arianna Holden. May it please the court. My name is Elliot Almanza. I represent the appellant, Arianna Holding Company LLC. I would respectfully request a couple of minutes of rebuttal. Thank you. Let me ask you this. If DFP does not apply, do you concede that you lose, since it looks like you concede that the elements for a preferential transfer are satisfied? We don't concede that, because there are more essential state interests at play here than there are in DFP. In addition to the stability of title issues, there is the collection of tax issues, which is also an essential state interest. So even if DFP did not apply for some reason, we believe that that is an additional reason why we would still prevail. But don't the taxes get collected anyway? No, Your Honor. Tax collection. I understand that the Third Circuit case upon which the district court relied, Simon v. Sibrick, concluded that the collection of tax is not implicated because upon the purchase of a certificate, the tax debt is extinguished. There is a case that originated in the bankruptcy courts of this circuit, Henry Princeton Office Park. The Third Circuit certified a question of law to the New Jersey Supreme Court. The question was whether a tax lien holder or a tax certificate holder holds a tax lien. The question the New Jersey Supreme Court had to address was whether which of the competing approaches was correct. Is a tax debt extinguished upon the purchase of a certificate? Or does the lien buyer succeed to the tax lien of the taxing district? And the Supreme Court of New Jersey decided as a matter of state law that tax debt is not extinguished upon the purchase of a certificate. It's merely that the lien buyer succeeds to the interest of the taxing district. So the property goes on with the tax lien against it. Correct. Yes. Correct. And if if if Simon hasn't been abrogated and if there's an actual conflict between Princeton and Simon, what do we do? Well, I believe Simon was decided, you know, with due respect. I don't think that there was much contemplation or citation to state law to determine whether the purchase of a tax lien constituted the collection of a tax. In Simon v. Sebrick, I think that Princeton Office Park resolved that question firmly in our favor. So so I do think that there's there's no legitimate dispute now. The New Jersey Supreme Court has spoken. They have said that a tax debt is not extinguished upon the purchase of a certificate and the purchaser succeeds to the lien interest. The only way you collect taxes in New Jersey is through the foreclosure of the certificate itself. And again, that's how tax collection exists in New Jersey. It's the only way. Redemption. You said foreclose the equity of redemption. Correct. Yeah. We informally say foreclose the certificate. Yes. Foreclose the equity of redemption. Correct. Yes. So can't they foreclose the equity of redemption once again? At what procedural posture, Your Honor? I'm not quite certain. At this point, after the property has become part of the bankruptcy estate, they have their claim for that amount. Correct, Your Honor. And the question is, should they be treated like other debtors or should they get a preference? Well, our qualm with the decision below is that we are treated like any other creditor at the expense of what we believe is a misuse of the bankruptcy code to affect a result that was not intended by Congress. Well, when you say it's not intended by Congress, if we are proceeding under 547 rather than 548, isn't that what was intended by Congress? Your Honor, I think the best way I can answer that is by reference to the Midlantic case that I cite in my brief. That case involved a different section of the bankruptcy code, 554, which describes the trustee's abandonment power. That statute is broad, expansive. It has no constraints upon the exercise of that power. It says that the trustee may abandon property of the estate that's burdensome to the estate or that is of inconsequential value and benefit to the estate. There's nothing ambiguous about that. There was no dispute that the terms of the statute were met, but both this circuit, because the case originated here, both this circuit and the Supreme Court refused to count it as an interpretation of 554 that permitted the trustee to exercise his powers in derogation of state law. And the exact same principle, I think, is true here. And, in fact, it's magnified because we're dealing with multiple essential state interests. It's not that the statute's ambiguous. We don't argue that 547 is ambiguous. And, again, you're correct. Opposing counsel, I'm sure, will be happy to point out that we concede that the elements are met. But the manner in which it's applied derogates to essential areas of state law, we think, without a clear and unambiguous intent. And these are not minor matters of states' rights. Why wouldn't a clear and ambiguous intent come out of the language of 547? Because stability of titles and the collection of taxes are two fantastically important concepts. And it's hard to imagine that these two vital, vital concepts would have just been overlooked. Congress said any transfer in 547. It didn't say except for those transfers which impinge on or implicate or call into question tax interest or title to property. It said any transfer. And they were clearly aware that's what they're going at in 547. They're clearly aware that a literal reading of that language could be used to call into question property sold in a situation such as this. And any transfer is the exact same language as in 548. You also have reasonably equivalent value in 548. Yeah. And that is not anywhere else in the tax code. In the tax, in the bankruptcy? I'm sorry, the bankruptcy. I had the same problem. To me, it's all green tax and bankruptcy. It's all a mystery. I understand and I agree. I agree with that. But, again, I would have to imagine that if Congress is going to do something that prevents a municipality from collecting its taxes, here we're dealing with a private lien holder, I understand. But imagine a municipal lien holder, which happens all the time. There's no distinction. Imagine Congress saying, municipality, you ended up with this certificate because no one bought it. All you've done is try to recover the delinquent taxes by instituting an in rem action. It's perfectly within your statutory right to collect taxes. But you know what? We are going to disrupt that ability by allowing the debtor to come in and undo your work. Well, why can't, I'm still not sure I buy the fact that the ability to collect taxes is implicated. The debtor could be forced into bankruptcy. The cases talk about that situation where the situation to avoid a preferential transfer could be for the debtor to be forced into bankruptcy and allow the normal mechanisms to come into place in that context. It seems to me the taxing authority is going to be in no lesser position whether or not the tax sale is avoided. They still have the outstanding tax obligation. That's not going to go away. It's correct that the obligation still exists, but one of our overarching points is that the New Jersey legislature has made the policy decision that after a period of time, a lien holder has a statutory right to foreclose the equity of redemption and become the property owner. And again, after a certain period of time, that's no longer a preference. Right. After a certain period of time, it would be beyond any correct. Now, there are other implications with regard to that. What are they, the other implications? The other implications are that in order to conclude that Congress intended this result, that the bankruptcy court and the district court arrived at. Let's go backwards. Rather than starting out, rather than conclude Congress intended this result, take it from the position of whether or not Congress did not intend this result. I'll be happy to do that, Your Honor. It is hard or nearly impossible for me to conclude that in enacting the preference statute or the fraudulent conveyance statute that Congress intended every foreclosed property, which is the subject of a bankruptcy filing, a timely bankruptcy filing, to be subject to at least a two-year and 90-day federally created cloud on title, which would make alienation just very, very difficult. And this is in the case of – You already do have a two-year cloud on title because the purchaser of the tax certificate can't do anything with that for two years. Correct. So there's already a cloud on how we define title, be it the property owner's interest in title or the lien certificate holders, tax lien certificate holders. Whatever title, whatever interest that person has in the property, that is an inalienable interest for two years from the time the lien holder purchased every tax set. Your Honor, it's not – the purchase of a certificate is not conveyance of title. So the two-year period – No, that's where I said interest. It's a two-year ground on the interest. Put it that way. The lien holder during that two-year period has no interest beyond the certificate itself. Which is a very substantial interest. Correct. But there's no issues of cloud on title because the lien holder does not own the property at that point. The lien holder only owns the property – The property owner – put it this way. The property owner cannot sell within two years because – The property owner can sell within two years, absolutely. The lien holder's right to redeem. What happens? I don't want to keep getting off. I'm sorry. But let's assume a situation. The person's in debt. There's a tax sale. Someone goes in and purchases the tax certificate under this really amazing system, which I'm learning about, where you bid down the interest rate. It boggles my mind. But given that as it is, that property owner – let's assume it's a household. They can't sell their house, really, because for two years somebody can come in and they've got this outstanding cloud with the lien on it. The lien holder's interested. Your Honor, the tax certificate is subject to the owner's right to redeem throughout the entirety of the foreclosure up until the point of the entry of final judgment. So the answer is – It'd be five years. It could be many, many years. So they've got the cloud on title no matter what. Well, you're speaking from the debtor's perspective right now. I'm speaking from the certificate holder's, the new owner's perspective. The new owner, the tax lien holder who has successfully foreclosed the lien, now – Wait, you just said who has successfully foreclosed the lien. Foreclosed the equity of redemption, is now staring down at minimum a two-year and 90-day cloud on title where nothing can be done with the property so long as the debtor has filed a bankruptcy petition within 90 days of the transfer. Yeah, but that's my point. Take the 90 days away from it. They're already looking at a two-year cloud where they can't do anything with that certificate because of the right of redemption. You're just tacking on 90 days and making it sound like Congress could not have intended for there to be a two-year, 90-day hiatus in this lien certificate purchaser's ability to do something. But there's already in the state law a two-year hiatus that is subject to the right of redemption. But the – during the time when a certificate issues, again, up until the point the final judgment is entered, the property owner can redeem the certificate. The property owner can sell the property. And the purchaser can redeem it. This is commonplace. This happens with frequency. And the purchaser redeems the certificate. There are many things that can happen. Well, you're saying the purchaser can sell the property, sold something to the right of the lien holder, to redeem within that two years from the initial time the person bought the lien, right, the tax certificate. Could you repeat that, please, Your Honor? Yeah, I'll try. It didn't come out too well the first time. Maybe it'll come out better the second time. You're saying the property owner can sell the property. Correct. But that sale is subject to the right of the tax lien certificate holder to redeem within two years from the time the certificate was purchased. Correct. The buyer buys that house, knows that they may not be buying anything because the certificate holder can come in. In other words, the sale of the home by the owner does not extinguish the tax lien certificate's interest. Correct. Your Honor, any time there's a transfer of property, there's going to be an affidavit of title. So this has to be disclosed in the sale and purchase process. So it's not like there's going to be some sort of secretive, we're going to hide this tax lien from the prospective buyer. The buyer is going to know, and the buyer in all likelihood. I assume it's recorded and it's on record. It's going to be satisfied on closing. In, you know, 99.99% of cases, the tax lien is going to get satisfied out of the proceeds of closing. So when we speak about this two-year period, this is this two-year period that you speak of about where the tax lien holder can't do anything. All that is is a statutory timeframe that permits the property owner additional time to gather the funds necessary to redeem out the certificate. There's no, the concept of a cloud on title doesn't really exist during that period because, again, from the certificate holder's perspective, because the certificate holder doesn't own it. He doesn't own the property. The certificate holder doesn't own the property until the final judgment enters. And once that final judgment enters. All I'm saying is the two-year and 90-day period that you're talking about, that 90-day addition to the two years which is already there in the New Jersey law does not sound like kind of onerous imposition on the certificate, on either person's interest that you're making it sound because the two years is already there. The two years they're absent. There is no two-year cloud on title for if a certificate holder becomes owner of the property. Unless 547 is construed in this way, there is no such thing as a two-year cloud on title for a certificate holder. They become the owner of the property free and clear. They're there in the clear. They've got the property. It's a right to redeem. No, no, no. Once the final judgment entered. Okay, we're talking about after the deficit was spread. Correct. So when I'm talking about this cloud on title, this is the same concept I'm importing from BFP because it's the exact same mechanism. It's in BFP under 548. It's a two-year. There's actually a two-year, not 90-day. Two-year period within which the conveyance can be made to bring the claim. So, really, it's a little bit extended there on the front end. But on the back end, it's not because once that petition is filed, we're talking about another two years, at least, within which to file an adversary action seeking to recover the property. And, again, going back, it's hard for me to conceive that Congress ever intended to subject real property in states to this very onerous cloud on title without a very clear demonstration of intent to do so. I see my time here is up. Your Honor, had a question? I can wait. Thank you, Your Honor. Good morning. My name is Leonard Walchek. I represent the appellees, Frank and Dawn Hackler, who are also debtors in a pending Chapter 15 bankruptcy case in the Banksy Corporate District of New Jersey. I was just listening. That's something prepared here, but I was just listening to the back and forth between the court and counsel. The bankruptcy code is implied in every transaction and every contract. It's part and parcel of it. Every transaction has the potential to be impacted by a bankruptcy filing. In bankruptcy court, we reject executory contracts. We reject unexpired leases. Ipso facto clauses are thrown out. Preference claims are adjudicated. Transfers are avoided. Fraudulent transfers are reversed. Clawbacks. So this is nothing where we're picking on tax sale certificate holders. This is something that impacts every potential transaction in interstate commerce, residential real estate, commercial security interests, what have you. But to the point regarding the potential clouds on the title, in the very excellent amicus brief that was filed by. Yes, the National Consumer Bankruptcy Rights Center. On page 15 thereof, they hit it. Because if it so happens that a tax sale purchaser forecloses and acquires title and is so far along in developing the property that a bankruptcy filing occurs down the line, there is a remedy which wouldn't upset the apple carton totally. Under Section 550A of the Bankruptcy Code provides relief. The avoided transfer could be reduced to a money judgment in lieu of returning the property transfer. So if there's any concern about disrupting title because of subsequent development, that's something that the Bankruptcy Court or the Bankruptcy Code, rather, has made available as a tool to the Bankruptcy Court to remedy any potential prejudice that might result from that. But, Your Honor, the crux of the matter here is you're right. BFP is a fraudulent transfer case. It's a Section 548 case. And while I pled under alternative theories, bankruptcy judge Gravel decided under Section 547B, the preference statute. There's, again, Judge Roth noted, the lack of the phrase reasonably equivalent value in Section 547. In 547, we're just figuring out, did this creditor, this transferee, receive more on its antecedent debt than it could have received in a hypothetical liquidation under Chapter 7? More is very easy to interpret. Any third grader can figure out what more is. The cases cite that a reasonable businessman could determine what more is. So BFP really is a statutory construction case. You don't have to go beyond the statute to see that, well, the elements of the statute are applied. We don't have to divine what the reasoning of Congress was. We just apply the statute. The Supreme Court in BFP noted, well, look, you know, we have this neologism, which is a new word. I had to look up the definition of that word. Of reasonably equivalent value, which for whatever reason is found nowhere else in the bankruptcy code, in the definition sections or anywhere else. So, okay, what is reasonably equivalent? In doing bankruptcy work for nearly 30 years, I've been involved. My condolences. And my sympathy. Thank you, Your Honor. So noted. We've come across a lot of options, and I've been amazed at the results where options, which I didn't think would come anywhere close to bringing what they brought in, exceeded expectations. And conversely, options that we thought would do great were disappointing. But you accept the value because so long as it's well noticed, advertised, and broadcast, so that you can encourage as many spirited and active bidders to attend. If only one bidder comes, well, so be it. And that's the highest bidder. You accept it. That's what BFP is all about. And that's the state law language in BFP. Exactly. In evaluating mortgage foreclosure procedure, which is a very different thing. Mortgage foreclosure in Pennsylvania, as well as New Jersey, the property to be offered for auction is well advertised for a series of weeks. The particular property is auctioned off at the courthouse steps, and the result is the result. That's not what we have under New Jersey tax sale foreclosure procedure. As was discussed previously, what is auctioned is the tax sale certificate. It's not even the debtor's property that's being auctioned. It's the lien of the municipality. It's really the municipality's property that's being auctioned, in essence, the lien, the ability to collect the taxes at a tasty 18 percent interest rate. So when I hear – It gets bid down, which I don't – It gets bid down. That's the reason for encouraging bidding down the interest rate. Fascinating, because, I mean, whenever I hear the argument that, oh, this decision is going to chill bidding on tax sale certificates, these bidders are going – are bidding over each other, bidding down the rate to the point they pay a premium over their certificate because all subsequent taxes accrue at 18 percent. So what they're bidding on is the tax up until the date of the certificate sale, the tax liability due. Subsequent to that, it's at 18 percent. I like that. I'm sorry. I like that modification. Well, in a zero interest percent world, where are you going to get a rate of return on that unless you pay off your credit card? Is it the same system, basically, that the Seventh Circuit – I think it's Inmai Smith – it describes, does it basically function the same way? Because they give a very nice explanation as to how the system – it issued there, I guess, was Illinois or maybe Minnesota. I believe that's the case, Your Honor. There are – I think there are other cases cited by appellant where there's an overbid system. That's not what we have here. What we have here is a situation where it's the certificate that's being auctioned, and then after a two-year waiting period, if there's no redemption by the property owner, then a foreclosure can occur, which results in upon entry of judgment, it's a strict foreclosure. It's immediate transfer of the property. There is no auction of the property. There's no noticing of the sale of the property. There's nothing like that, which is why BFP specifically in footnote addressed that and said, you know, our decision today doesn't necessarily address strict foreclosures such as – and I think they even itemized. Tax sale. They did say that. Tax sale. BFP was sold for – the lien was sold for $42,500. Approximate, Your Honor. We submitted a valuation to the bankruptcy court for this property at approximately $350,000. That valuation was not contested. That seems like a typical situation of being over-secured. To say the least, and this tax certificate holder is not going to be prejudiced. It's going to get paid through the bankruptcy case its lien amount plus all accrued interest. You know, since we're talking about BFP, we can talk about another Justice Scalia opinion rendered somewhat before BFP, a Supreme Court case called matter of – I'm sorry, Timbers of Inwood Forest, which held in essence that a secured creditor is entitled to payment, not its collateral. And that's what the secured creditor is going to get, payment. So I have some time remaining, but with that – Let me ask you the same question I asked your colleague. If there is now a conflict between our decision in Simon and the New Jersey Supreme Court subsequent decision in Princeton, should that matter to us? I don't know that there is a conflict at all. The Tax Injunction Act is not applicable. That's a case out of this circuit. Current Supreme Court Justice – Alito. Yeah, of course, Justice Alito. Heckinger investment specifically footnote in that case that the Tax Injunction Act does not prevent the bankruptcy court from enforcing the provisions of the bankruptcy code that affect the collection of state taxes. So it's – you have Article I, Section 8. You have the supremacy clause. You have the bankruptcy clause, which wherein Congress shall only enact bankruptcy laws. The states submit by ratifying the Constitution to this federal court – federal bankruptcy law overlay over state tax law and procedure. So, no, Your Honor, I don't believe that that should enter into the calculation at all. Let me add that some of the most interesting cases I've had as a judge were bankruptcy cases. Oh, my God. You poor soul. You've got to get a life. I'm a Delawarean. Nothing happens in Delaware. Bankruptcy, great. That's wonderful. Well, I hope I didn't disappoint you with this one. You can blame my adversary for bringing this up. I'm a Philadelphian. Some of the most boring cases I have had have been bankruptcy. Well, Your Honor, unless the court has any other questions of me, I think I'll just rest on what I have. Thank you. Thank you. Thank you, Your Honors. I'd like to focus on one thing Opposing Counsel pointed out. In order to resolve concerns about federalism, Opposing Counsel said, well, it's okay, because under Section 550, the bankruptcy court can simply enter an order compelling the lien holder to compensate the former property owner for the value of the property. That way, stability of title is not impacted. That's the exact same approach taken by the GGI court, Judge Altenberg, a decision out of the District of New Jersey, which the debtors substantially rely upon. But let me just illustrate why this is so, so flawed and could have never been in the contemplation of Congress. Imagine, as I suggested earlier, a municipality that was doing nothing more than exercising its statutory authority to collect taxes by filing an in-rem action, and you have a delinquent taxpayer to the tune of, say, $425,000, which is really substantial. So the municipality institutes the in-rem action and obtains the final judgment of foreclosure, becoming the new owner of the property. That delinquent taxpayer, former owner now, runs to bankruptcy court, files an adversary action along with a 547 claim, and prevails under 550 and obtains an order compelling the municipality to compensate him for the full value of the property. This is stunning to me, and this is why I cannot imagine that the Bankruptcy Code was ever intended for this purpose. Municipalities budget years in advance. An order from a bankruptcy court compelling a municipality with a fixed budget to go out-of-pocket and pay full freight to a delinquent taxpayer, and that's supposed to resolve the stability of title issues? That seems inconceivable to me. The municipality would have to pay would be the amount. They wouldn't be paying the full amount of the property. They would be paying the full value of the property. Minus the value of the tax. Again, that's revenue that was by right to municipalities that it did not get. It is paying either through non-receipt of taxes that is owed, plus out-of-pocket payments. Like, for example, in that GGI case, there were about $425,000 of unpaid taxes, and the market value of the property was ultimately determined to be somewhere in the neighborhood of like $530,000. So could you imagine a municipality getting hit with a $100,000 bill out of nowhere merely because it was exercising its statutory right to in-rem a property? That's the way that the bankruptcy court, that's the way the debtors suggest that 547 should be applied. Maybe municipalities need discretionary funds. Municipalities, they have what's called, I'm not sure how familiar your honors are with municipalities workings in New Jersey. Every municipality has an unfunded reserve, which is supposed to account for delinquent taxpayers for that particular year. Unfunded reserves were never meant to cover huge bills from bankruptcy court orders forcing. Has this actually been a problem? Well, that's the thing. This is a problem of very recent. Maybe it's hypothetical, but are there factual cases underlying your hypothetical? Not yet, because this is of very recent vintage. This construction of 547 is of extraordinarily recent vintage until this case, as far as I know and as far as our research revealed, this is the first time that a regularly conducted tax foreclosure in New Jersey has ever been considered a preference action and been vacated on that basis. Wasn't Burley out of New Jersey? Burley, that was under 548, not 547, but correct. Burley started the trend. Until Burley in 2013, this was inconceivable. There was a case on this. GGI was consistent with Burley. GGI was subsequent to Burley, correct. The kind of gold standard, if you will, in New Jersey bankruptcy law, until Burley was in Rima Graf, which said you can't use 548 in order to vacate a lawfully and regularly conducted tax foreclosure. And then all of a sudden, Burley opened the floodgates, and here we are. And it's a brand new phenomenon. The argument based on state interests, in my mind, would be stronger if the Supreme Court had not dropped footnote 3 in BFP because it seems like they deliberately carved out foreclosures in tax cases. What do you do with footnote 3? They said the concerns may be different. So I would note that, but I'd also note that subsequent to that, a majority of the circuit courts of appeal to consider the 548 issue as it relates to tax sale foreclosures have come down on my side. They've said the concerns of BFP are wholly applicable in cases of tax foreclosure. The identical federalism concerns are present. Those are 547 cases? 547 is no. There are fewer cases. Now, I would note that a panel of this court in July of 2018 did 547 with regard to a mortgage foreclosure and concluded that 547 could not be used to undo a mortgage foreclosure. That's the In re Veltri case. It's cited in my brief. Now, the bankruptcy court and the district court versions are cited in my brief. The Third Circuit case was too new at the time. I didn't pick it up yet at the time I had briefed. And so I believe one panel of this circuit has already decided that issue as far as mortgage foreclosures. It was in the federal appendix. I could find the site for you if you wanted. However, we decide we ought to make this a precedential opinion? I believe so. I think it's a very important issue. It comes up frequently in the context of bankruptcy proceedings. Unless Your Honors have any other questions. Thank you. Very well-argued. Today, we're talking about this during the break. It's a day where we've seen very fine oral arguments. To the clerks who are new to this, don't get used to this. It doesn't always work this way, but today we've had really skilled counsel and very fine arguments. Thank you both. Thank you very much, Your Honors.